

□ ORIGINAL

lindaagueromemo

LEONARDO M. RAPADAS
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Ave.
Hagåtña, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM

DEC 1 9 2007

JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LINDA AGUERO,<br><br>    Defendant. | CRIMINAL CASE NO. 07-00004<br><br>GOVERNMENT'S MEMORANDUM REGARDING U.S.S.G. 2K2.1 and 2K1.3 ("Prohibited Person") |

    Defendant Linda Aguero has pled guilty to two offenses: Dealing in Firearms and Explosive Materials. The base offense level for Dealing in Firearms is level **14**, the base level offense for Explosive Materials is level **16**. Both base levels are arrived at by applying a "prohibited person" status.

    The issue is whether the sentencing Court can rely on hearsay statements to support a finding that defendant Linda Aguero is a "prohibited person."

**Hearsay Statements**

    The hearsay statements before the court are as follows:

1

1) The Confidential Informant who performed the controlled buy purchased two firearms and a $50.00 bag of marijuana from defendant's spouse Peter Aguero. The amount of marijuana was less than was agreed. The Confidential Informant informed the A.T.F. Agents that Peter Aguero stated that his wife Linda Aguero smoked some of the marijuana. This passage is contained in the Presentence Report, Page 6, paragraph 25.

2) The Confidential Informant was "wired" with an electronic recording device and on March 29, 2005 recorded Linda Aguero's statement that she took some of the marijuana which was intended to be sold and smoked it to "cool down." This statement is contained on page 110 of the Discovery and attached as Government's Exhibit 1.

3) Special Agent Hoang Nguyen has stated to the Court that the Confidential Informant is reliable.

### The District Court Can Rely on Hearsay at Sentencing

Rule 1101(d) of the Federal Rules of Evidence states as follows:

"(d) Rules inapplicable. The rules (other than with respect to privileges) do not apply in the following situations: . ...

3) Miscellaneous proceedings. Proceedings for extradition or rendition; preliminary examinations in criminal cases, **sentencing**, or granting or revoking probation; issuance of warrants for arrests, criminal summonses, and search warrants; and proceeding with respect to release on bail or otherwise."   F.R.E. 1101(d)(3), emphasis added.

Congress has provided by statute that the hearsay rule and other evidentiary limitations do not apply to sentencing.

18 U.S.C. §3661 specifically states:

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

The Commentary to United States Sentencing Guide 6A1.3(a) also provides guidance:

"(a) When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding

2

that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."

The commentary also states "Out of court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means." United States v. Rogers, 1 F.3d 341 (5th Cir. 1993).

In United States v. Littlesun, 444 F.3d 1196 (9th Cir. 2006), a husband and wife were the targets of a drug conspiracy investigation. The husband pled guilty to selling 3.7 grams of methamphetamine, however he received an enhancement for selling 32.5 grams of methamphetamine to an undercover informant. The Court imposed an increase because a B.I.A. Agent testified at sentencing that Littlesun's wife told them that Littlesun used a gram of methamphetamine daily, which added one ounce to the defendant's guideline calculation. The defendant denied receiving the ounce of methamphetamine. Littlesun, 444 F.3d 1196, 1199. The Ninth Circuit noted that Congress has provided by statute that the hearsay rule and other evidentiary limitations do not apply to sentencing. "We require only that the testimony "be accompanied by some minimal indicia of reliability." Littlesun, 444 F.3d 1196, 1199 (9th Cir., 2006). "Thus the law on hearsay at sentencing is still what it was before Crawford: hearsay is admissible at sentencing, so long as it is "accompanied by some minimal indicia of reliability." Id, at 1200. Federal law is clear that a judge may consider hearsay information in sentencing a defendant. United States v. Fernandez-Vidana, 857 F.2d 673 (9th Cir. 1988).

//
//
//
//

3

The Government urges the Court to find defendant a prohibited person, that is a person who is an unlawful user of any controlled substance (marijuana) at the time of the commission of the offenses. 18 U.S.C. §842(I).

RESPECTFULLY SUBMITTED this 19th day of December, 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

4

ATF Case No. 787020-05-0013
Case Title: Peter Ogo AGUERO
Prepared by ATF S/A Kenneth Torres

Activity: ATF Confidential Informant meeting Peter AGUERO at 170 E. Anthurium Street, Pagat Mangilao, Guam on March 29, 2005.

Source: Maxwell Cassette Tape
Parties involved:  SA: Kenneth Torres
                   CI: Confidential Informant
                   PA: Peter AGUERO
                   LA: Linda AGUERO
                   NA: Nadine AGUERO
                   GA: Gerald AGUERO
                   UF: Unidentified Female

Phone beeping.

CI: Time starts now, time starts now.

SA: OK.

Roosters in background.

PA: Yes sir?

CI: Ko gaigi si Pedro? (Is Pedro here?)

PA: Taigui lai. (Not here.)

CI: Ai lana.

PA: (unintelligible?) Hayi na Pedro un espi-pi-ha, lai hu? Pedro-n pat-gun? Pedro-n Tata? (Which Pedro are you for, son? Pedro child or Pedro father?)

CI: Si Pedro-n manumku. (Older Pedro.)

LA: Pedro senior.

PA: Angin i Pedro-n tata ney... (If Pedro father...)

LA: Watch your head, watch you head.

CI: Oh that's the roof. Alright, how much?

LA: I give five-fifty.



108

CI: Five-fifty?

PA: Geraldo (unintelligible?)

LA: Gerald get this dog. (unintelligible?)

PA: (unintelligible?)

CI: That one for five-fifty?

NA: Hello, I cannot. Gerald can go by himself.

PA: Gerald (unintelligible?)

LA: Shit, Gerald is just fucking around.

PA: Likes to play.

CI: Don't make it that expensive bro, lana I got budget.

LA: No worry then, one grand. (laughing)

CI: Shit. Like I'm telling Roland, you better be, you have to be a female, boy.

LA: (laughing) for you, for you to spend that much.

NA: (unintelligible?)

CI: (unintelligible?)

PA: Parehu yan eyi un fahan gi twelve. (Same price as the twelve.)

CI: Huh? Kuanto? (How much?)

PA: Umbre eyu ni un fahan gi twelve. (Same as the twelve.)

CI: (unintelligible?)

PA: Where is the baggie?

LA: Huh?

PA: Give him the bag.

LA: What bag?

PA: The one in the compartment.

LA: Oh, go get the thing in the compartment, Geraldo.

NA: How come (unintelligible?)

LA: Because it's up on (unintelligible?)

PA: Because you're too fat.

NA: (unintelligible?)

LA: (unintelligible?)

PA: Actually there was five or them, lo...

CI: (unintelligible?)

PA: Yeah.

CI: Yoo-hoo.

PA: Lana Hun, only that?

GA: (unintelligible?) it got smashed up, so.

CI: Lana Hun, only that?

LA: Hun, I just told you, I took a little bit, but these guys keep like this in the truck.

GA: (unintelligible?)

LA: I'm not ripping you off. I told him to get some for me to smoke.

GA: Well, whatever. I tried it.

LA: (laughing) I was telling you, he doesn't believe, they believe I smoke that. When I'm at home I smoke that to cool down.

CI: But this is not for me.

PA: Lana, she's smoking just to have fun.

LA: Yeah.

CI: Not bad though. (unintelligible?) I'm in the wrong business.

LA: Well Gerald can go ask his Dad, (unintelligible?)

LA: Gerald, ask (unintelligible?) got my bullets.

CI: Oh, I forgot dude.

UF: on the phone (unintelligible?)

LA: Gerald ask (unintelligible)

PA: Soon as its ready.

UF: My daughter?

LA: (unintelligible?) right.

GA: (unintelligible)

CI: (unintelligible?)

PA: (unintelligible?) Hey dude, but ah, I don't know anybody ah.

CI: (unintelligible?) Seguru? Hey dude, If I find you a (unintelligible?) you the first person, I'm gonna Christmas you dude.

NA: (unintelligible?) you gonna make chalakilis tonight?

GA: Huh?

CI: For which twelve?

NA: Did you hear her? I didn't see my Chalakilis.

PA: I don't have, I don't have another twelve gauge. I got a twelve, but it's registered.

CI: So you gonna actually sell that one?

PA: I gonna get rid of it.

CI: Tomorrow?

UF: (on phone) (unintelligible?)

**111**

CI: (unintelligible?)

PA: (unintelligible?) if I'm gonna sell that twelve, I'm gonna sell it the way it is.

CI: (unintelligible?)

PA: Same price, but it more, a little bit less than.

CI: That's for the baggie. For (unintelligible?)

UF: (unintelligible?)

LA: But its (unintelligible?) package not from the (unintelligible?)

CI: How much for the? Alright, and how much for that one? Same for the twelve?

LA: (unintelligible?)

CI: Umbre ya, be nice to your in-law. Cause I'm always wrongfully accused and now, lana I'm already (unintelligible?) husband.

LA: (unintelligible?)

PA: Hey but ah.

CI: You heard that right?

PA: But if you're gonna get the twelve, the registered one.

LA: (unintelligible?) pick mango.

PA: I'll...

CI: Yeah.

LA: And I thought (unintelligible?)

PA: I'll register it, then I'll give it you, but I'm gonna have to go in and...

CI: Report it stolen.

PA: That it's stolen.

CI: One-fifty.

PA: But ah, you know that twelve there ney, you saw it already, right?

**112**

ATF Case No. 787020-05-0013
Case Title: Peter Ogo AGUERO
Prepared by ATF S/A Kenneth Torres

Activity: ATF Confidential Informant calling Peter AGUERO on cellular/two-way radio on April 13, 2005.

Source: Maxwell Cassette Tape
Parties involved: SA: Kenneth Torres
CI: Confidential Informant
PA: Peter AGUERO

Prelude - SA: ATF Special Agent Ken Torres, Guam Field Office. Case number 787020-05-0013. ATF CI 787020-31 making a consensually monitored telephone call to Peter AGUERO at 1*13684. Today's date is April 13, 2005. Time is 9:56 in the morning.

Phone beeping.

PA: Yeah Mike?

CI: Hey, good morning.

PA: Good morning.

CI: How you doing today?

PA: OK, OK.

CI: Hey I got the money for the SKS ah, I forgot to ask you, what is the caliber?

PA: I think that a nine-point, something like that.

CI: That's still for one-fifty right?

PA: Yeah.

CI: OK – I got some change to go with that, do you got anymore the blasting caps?

PA: No, not the blasting cap yet (unintelligible?) I find another California Seal, one more. Ah, that's the only thing that I can do man.

CI: OK – Hey can you get me anymore ah, bags?

PA: Bags? Lana it. The only, the only person that ah, gave me that is my brother, but I don't know, I'll see, I'll see if I can get.

**121**

CI: Can you just get nice big bag and make sure Linda don't touch and (unintelligible?) lana the other one you gave me, when I chopped it up, it was OK, but it wasn't enough.

PA: Yeah, I know. Ah, Linda ney, I told her little bit just for her to smoke, kulan kaduka i lunai.

SA: Ask him to get something tomorrow.

CI: Anyway, do you think you can get for tomorrow?

PA: Ah, I'll see, because right now I'm here at work ney. I'll see when I get home.

CI: OK then tomorrow I'll meet you at your place at the same time, eleven O'clock?

PA: Bro I start work at nine.

CI: Oh.

SA: (unintelligible?)

CI: Well what's a good time to meet then? Unless we do it at his work.

PA: Ah maybe like on a Saturday. Saturday cause I, I'm off Saturday ney.

CI: Hey how about, how about, can you just carry it and I'll just pick it up at your work then?

PA: The gun?

CI: Yeah.

PA: Yeah.

CI: OK- so what will be a good time tomorrow?

PA: Ah, (unintelligible?) over like, about ten, eleven, I'll be here. I'm usually here like about nine, nine-thirty.

SA: (unintelligible?)

CI: OK then, about eleven.

PA: Yeah.

CI: OK – brother. Thank you.

**122**

SA: Ask him (unintelligible?)

CI: Yeah.

SA: OK.

PA: OK.

CI: Shoot.

End of recording.

**123**